UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JAHMARI BUTLER,
    Plaintiff,
v.
KEN CLARK,
    Defendant.

Case No. 5:18-cv-07446-EJD

**ORDER DENYING JAHMARI BUTLER'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)**

Re: Dkt. No. 1

Jahmari Butler was convicted by a jury in the Alameda County Superior Court of carjacking, second-degree robbery, driving recklessly while evading the police, driving in the opposite direction of traffic while evading the police, and unlawfully driving or taking a vehicle, with a gun enhancement. The trial court sentenced Butler to an aggregate prison term of 27 years.

On June 19, 2017, the First District California Court of Appeal affirmed the conviction. *See People v. Butler*, 2017 WL 2628148 (Cal. Ct. App. June 19, 2017). The court rejected Butler's claims that: (1) there was insufficient evidence of aiding and abetting carjacking/robbery; (2) the trial court erred in admitting evidence of Butler's prior robbery conviction and erred by not instructing the jury on the limited use of the prior acts evidence; and (3) cumulative error occurred.[1] The California Supreme Court denied review on September 20, 2017. Dkt 12-17.

Butler then filed the instant federal petition for writ of habeas corpus under 28 U.S.C. § 2254. Petition for Writ of Habeas Corpus ("Pet."), Dkt. 1. Pursuant to an order to show cause why the writ should not be granted, Defendant ("the Government") filed an answer. Memorandum of Points and Authorities in Support of Answer to Order to Show Cause ("Opp."),

---

[1] Butler asserted more claims. However, he only pursues the identified claims in this suit.

Case No.: 5:18-cv-07446-EJD
ORDER DENYING JAHMARI BUTLER'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

1

Dkt. 12-1.  Butler filed a traverse.  Traverse and Memorandum of Points ("Reply"), Dkt. 15.

**I.    BACKGROUND**

The California Court of Appeal summarized the facts of the case as follows:

> Around 2:00 a.m. on July 24, 2013, Tae Hae Cho was sitting in his car outside an Oakland apartment building waiting for a friend who resided there. The car, a white Lexus, was double-parked with the hazard lights on, the engine running, and the front windows open.
>
> Cho was "playing" on his cell phone when he heard footsteps on the sidewalk approaching his car. Cho looked in the car's rearview and side mirrors. He saw four African–American males wearing sweatshirts with hoods pulled over their heads. The men walked "very closely together," two by two. Cho watched the men until they passed the car, then returned his attention to his phone. Seconds later, one of the men pointed a gun at Cho through the open car window. Cho asked, "Do you want my wallet?" and said, "My cell phone is here and my wallet is in the glove box." The man responded, "Get out of the car." Cho, frightened and fearing for his life, exited the car. As he was exiting, the other three men ran up and entered the car as passengers. The gunman got behind the steering wheel and drove away. In the car were Cho's cell phone and his wallet containing $52 in cash.
>
> About 13 hours later, at 3:08 p.m., a California Highway Patrol officer saw the stolen Lexus. The uniformed officer, in a marked patrol car, radioed for backup and followed the Lexus for several blocks along Oakland streets. The Lexus traveled the streets "normally" when first observed but the driver's motions became "erratic[]" under police surveillance. The driver crossed a double yellow line and drove for three blocks in the lane designated for the opposite direction of traffic. The officer, believing the Lexus driver was trying to evade him, attempted a traffic stop. The officer activated his patrol car's emergency lights and siren and "went after the vehicle." The Lexus continued forward, then slowed to discharge a young African–American male passenger who stumbled out of the car into a lane of traffic. The Lexus continued onward then stopped. An African–American female passenger holding a small child exited the vehicle.
>
> The Lexus then sped away, travelling approximately 50 miles an hour in a 30 miles per hour zone. The officer followed with sirens sounding as the Lexus sped through red lights at two intersections, traveling in the opposite lane of traffic to go around stopped cars. An oncoming vehicle veered sharply toward the sidewalk to avoid a collision with the Lexus. The Lexus driver turned down a dead-end street. The highway patrol officer, now joined by the Oakland police, tried to prevent the vehicle from leaving the street and block the driver inside the vehicle. An Oakland police patrol car pulled up directly behind the Lexus as it drove toward the end of the street while the highway patrol officer pulled up next to the driver's door. The driver evaded immediate capture by turning into a driveway, exiting the vehicle, and running.
>
> The police officers got a clear view of the fleeing driver, whom they later identified as [Butler]. The police conducted a perimeter search and apprehended [Butler] about 10 minutes later after seeing him jump over a fence. The police searched [Butler's] apartment later that day. On [Butler's] bedroom dresser were Cho's

Case No.: 5:18-cv-07446-EJD
ORDER DENYING JAHMARI BUTLER'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

2

wallet with bank and store cards that had been inside the glove box of the stolen Lexus. Cho was unable to make a positive identification of [Butler], saying only that [Butler] was "possibly" the gunman who took his car.

[Butler] was interrogated by the police following a waiver of rights. [Butler] initially denied any knowledge of the carjacking. The police confronted him with the stolen property recovered from his apartment and accused him of being "the main dude of the robbery." The police told [Butler] "we're trying to figure out what role you had. . . . [Y]ou look like the main dude in this thing. If you had a minimal role, let us know. . . . And tell me who had the major roles. If not, you go down for the major roles." [Butler] then admitted his presence at the carjacking which, he claimed, others initiated. [Butler] said he had been driving his mother's car with his friends "D Money" and "Tone" when the car broke down and they had to walk. They were walking down the street when they saw a car sitting with its "hazard lights on." [Butler's] friends said "we're going to get on this" and "take this right here." The three men turned back toward the car. [Butler] told the police: "I ain't never did no shit like that. I ain't never really—Like I always, I've had a few robbery cases and shit like that but I ain't never been pulling no guns on nobody 'cause I'm kinda spooked of that shit. But they were like, we going do it, and they went and got on them." [Butler] said "D Money was the one who got on [the] dude. Went and put the gun to the dude, the guy in the car." [Butler] said "I just hopped in the car." The interrogating officer said "You just knew that after they were going to rob him that you were going to hop in the car" and [Butler] replied "Yeah." The officer asked [Butler] if he was "like a lookout" who was "looking around to make sure cops weren't coming." [Butler] said "Na" but admitted looking at the apartment building the driver was sitting in front of and "wondering if somebody's going to come out, and call the police, that's what I was tripping on. I wasn't worried about no police coming." [Butler] said he did not have a gun; only D Money and Tone had guns. [Butler] admitted that, hours after the carjacking, he was driving the stolen car and violated traffic laws trying to elude the police. [Butler] said D Money and his relatives were the passengers he dropped off during the police chase.

*Butler*, 2017 WL 2628148, at *1–2.

## II.   LEGAL STANDARD

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court

proceeding." *Id.* § 2254(d). The determination of a "factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a "highly deferential" standard for evaluating state court rulings and "demands the state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, under the "contrary to" clause, a federal court may grant a writ of habeas corpus only if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). The question under AEDPA is not "whether a federal court believes the state court's determination was incorrect," but "whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This high standard is meant to be "difficult to meet." *Greene v. Fisher*, 565 U.S. 34, 43 (2011).

### III.   DISCUSSION

Butler raises three claims for relief under § 2254. He argues: (1) there is insufficient evidence to support his carjacking conviction, (2) the state court violated his due process rights by admitting statements about his prior robbery convictions and by not giving a limiting instruction, (3) which resulted in cumulative error. The Court addresses these claims in turn.

#### A. Sufficiency of the Evidence

Butler first argues that there was insufficient evidence at trial to support his carjacking conviction. Butler was convicted on the theory that he aided and abetted the crime. Pet. at 11.

Under California law, "an aider and abettor is a person who, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages, or instigates, the commission of the crime." *People v. Jurado*, 131 P.3d 400, 443 (Cal. 2006)

(quotation marks and citation omitted).  The requisite intent to render such aid must be formed prior to or during the commission of the crime.  *People v. Cooper*, 811 P.2d 742, 744 (Cal. 1991).  Factors that are probative on the issue of knowledge and intent include "presence at the scene of the crime, companionship and conduct before and after the offense, including flight."  *People v. Mitchell*, 228 Cal. Rptr. 286, 289 (Ct. App. 1986).  Mere presence at the scene of the crime is not sufficient to constitute aiding and abetting, nor is the failure to take action to prevent a crime, "although these are factors the jury may consider in assessing a defendant's criminal responsibility."  *People v. Nguyen*, 26 Cal. Rptr. 2d 323, 330 (Ct. App. 1993).  "Likewise, knowledge of another's criminal purpose is not sufficient for aiding and abetting, the defendant must also share that purpose or intend to commit, encourage, or facilitate the commission of the crime."  *Id.*

The Court of Appeal held that there was "substantial evidence of defendant's intent to aid and abet the carjacking."  *Butler*, 2017 WL 2628148, at *3.  Evidence is constitutionally sufficient to support a conviction when, upon "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The reviewing court must presume the trier of fact resolved any conflicts in the evidence in favor of the prosecution and must defer to that resolution.  *Id.* at 326.  The jury, not the court, decides what conclusions should be drawn from evidence admitted at trial.  *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).  The jury's credibility determinations, thus, are entitled to near-total deference.  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Sufficiency of the evidence claims (*Jackson* claims) face a "high bar" in federal habeas proceedings because they are subject to two layers of judicial deference.  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  The court may not overturn a state court decision simply because it disagrees with it; it may only do so if the decision is "objectively unreasonable."  *Id.*  The only question is "whether the finding was so insupportable as to fall below the threshold of bare

rationality." *Id.* at 656.

Butler argues that, even after viewing the facts in the light most favorable to the prosecution, aiding and abetting liability is not shown. Pet. at 13–14. He contends that there is no evidence that he was part of the plan to take the car at gunpoint or that he shared his companions' intent to take the car at gunpoint. Reply at 5.

Butler's narrative is not the only "reasonable" version of events. There is ample evidence supporting Butler's conviction. Butler *knew* that his friends were armed and that they *intended* to steal the vehicle. Dkt. 12-16 at 24–31. The facts support the inference that Butler shared that intent and was part of the plan to steal the victim's car by force. After his friends "put the gun to [the] dude," Butler "got in the passenger's side" of the vehicle. *Id.* at 24. Not only did Butler get into the car, after the victim was forced out of the car at gunpoint, *he knew before he even got to the car that his friends intended to use force (or the threat of force) to steal the car.* As Butler stated, he and his friends walked past the car, and then walked back to the car to steal it. *Id.* at 27 ("Q: You just knew that after they were going to rob him that you were going to hop in the car. A: Yeah . . . ."). When his friends pulled guns on the victim, Butler stood near the car, watching the apartment building to see "if somebody's going to come out, and call the police." *Id.* Once the driver exited the car, Butler immediately followed his friends into the car and left the area. *Id.* Hours later, Butler was driving the stolen car, with one of his companions. Butler led the police on a high-speed chase in an effort to evade capture. Following his arrest, a police search of Butler's apartment yielded the victim's wallet, which had been taken from the stolen car.

By his own admission, Butler knew the "full extent of the perpetrator's criminal purpose" and there is strong circumstantial evidence that he gave "aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." *People v. Beeman*, 674 P.2d 1318, 1326 (Cal. 1984); *see also Ngo v. Girubino*, 651 F.3d 1112, 1115 (9th Cir. 2011) (noting that circumstantial evidence, and inferences drawn from it, may be sufficient to sustain a conviction). In light of the evidence, a rational trier of fact could reach a contrary conclusion. In

his police statement, Butler denied acting as a lookout, but admitted watching the apartment building for witnesses. From this, the Court of Appeal reasoned that a jury could find that Butler was "looking to sound an alert if he saw anyone come from the apartment building." *Butler*, 2017 WL 2628148, at *3. Butler now argues that it this is an unreasonable interpretation. Pet. at 15. Not so. As the Court of Appeal noted, a jury could have understood Butler to say that he was looking out for possible witnesses so as to assist in any necessary getaway. *See People v. Swanson-Birabent*, 7 Cal. Rptr. 3d 744, 754 (Ct. App. 2003) ("It has been held, therefore, that one who is present . . . to serve as a lookout, or to give warning of anyone seeking to interfere . . . is a principal in the crime committed."). The jury may also have viewed Butler's complicity in the carjacking and his later possession of the car and of the victim's wallet as support for the inference that Butler intended to aid his companions. *See Nguyen*, 26 Cal. Rptr. 2d at 330 (presence at crime and failure to prevent crime can be used by jury to infer intent).

On this record, viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found" that Butler aided and abetted the carjacking. *Jackson*, 443 U.S. at 319. Accordingly, the state court's rejection of Butler's sufficiency of the evidence claim was not objectively unreasonable and the Court cannot disturb the jury's finding. 28 U.S.C. § 2254(d).

### B. Prior Robbery Convictions/Limiting Instruction

Butler next claims that his due process rights were violated when the trial court declined to redact the portion of his statement to police that he had committed robberies before, but never with a gun. Butler did not raise a federal constitutional claim at trial, in the California Court of Appeal, or in the California Supreme Court. Rather, Butler only claimed that the trial court abused its discretion by failing to redact this portion of his statement.

A federal habeas court may deny, but not grant, an unexhausted claim on the merits under 28 U.S.C. § 2254(b)(2). *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) ("[A] federal court may deny an unexhausted claim on the merits where it is perfectly clear that the applicant

does not raise even a colorable federal claim." (quotation marks and citation omitted)). The federal habeas court reviews an unexhausted claim *de novo*. *Travis v. Davey*, 2015 WL 7753351, at *9 (N.D. Cal. Dec. 2, 2015).

The relevant question is whether the admission of information about Butler's prior robberies was so prejudicial as to render his conviction unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1171 (9th Cir. 2005). "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). In such cases, courts must rely on the jury to sort the inferences out in light of the court's instructions. *Id.* Admissions of evidence violates due process "[o]nly if there are *no* permissible inferences the jury may draw" from it." *Id.*

Butler's statement about having committed some unarmed robberies in the past was not introduced as propensity evidence. Rather, the statement was admitted to give context to Butler's denial that he did not intend to join the plan to commit an armed carjacking. The trial court explained that the statement provided context for Butler's alleged refusal to participate and demonstrated his state of mind at the time of the robberies. Dkt. 12-9 at 325–26, 400 ("[T]his is what he is doing to explain his conduct at the time that he's jumping in the [victim's] car."). After balancing the potential prejudice to Butler against the probative value, the trial court found that Butler's statement about his prior robberies was highly probative of Butler's intent and that the prejudice did not outweigh the value. *Id.* 399–404.

Butler is correct that *one* inference is that he had a propensity for committing robberies. However, that is not the only possible inference. As the California Court of Appeal explained, Butler's knowledge of his friends' intent to commit carjacking and his own intent to encourage or facilitate that crime were central issues in the case. *See supra.* Indeed, the prosecution had to prove that Butler knew about his friends' unlawful purpose and intended to aid that purpose. One

Case No.: 5:18-cv-07446-EJD
ORDER DENYING JAHMARI BUTLER'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

8

typical, and constitutionally permissible, way to do that is to show a defendant's intent via prior acts evidence. *See Williams v. Stewart*, 441 F.3d 1030, 1040 (9th Cir. 2006) (prior acts evidence offered to show proof of intent permissible). Therein lies the relevance of Butler's prior robberies: The fact that Butler previously committed robberies—and could distinguish this robbery (due to the presence of weapons) from his prior robberies—shows that he (1) knew his friends had guns, (2) knew what was happening, and (3) intended to assist in the carjacking.[2] This makes it more likely that Butler had the requisite knowledge/intent and that is the basis on which the trial court admitted the evidence. Dkt. 401 ("But what he said out of his own voice indicates that he knew what was happening, he explains it, and the jury should consider it."); *see also supra* n.2.

Because the jury could draw a permissible inference from the evidence, its admission did not violate due process "so long as the jury was instructed that it could not draw any improper inferences from it." *Brown*, 404 F.3d at 1173. In this case, the trial court did not instruct the jury that evidence of Butler's other crimes could not be used to show propensity to commit crimes. This Court thus cannot presume that the jury only considered the permissible inference that Butler possessed the requisite intent/knowledge. The question thus becomes whether the failure to instruct was harmless. *See California v. Roy*, 519 U.S. 2, 5 (1996) (stating that "trial errors" are subject to "harmless error").

The trial court's failure to instruct the jury about the proper use of the prior burglaries was harmless. There was strong evidence of Butler's complicity in the carjacking and robbery apart from the challenged statement. Moreover, Butler's statement about his prior robberies was brief and vague. Likewise, there were no further details about this prior criminal conduct presented to

---

[2] Butler argues in his traverse that this statement showed only knowledge and not intent. Reply at 7. He makes great light out of his statement that he had never done "no shit like that" and had "never been pulling no guns on nobody 'cause I'm kinda spooked by that shit." *Id.* In Butler's view, this shows that he lacked the requisite intent for aiding and abetting. Again, that is *one* possible interpretation. His statement that he "ain't even did no shit like that" coupled with his statement about his prior robberies *also* shows that he (1) knew this burglary was different from the others he had committed and (2) despite this difference, still intended to aid his friends, as shown by the fact that he walked back toward the car with them, served as a lookout, and followed them into the car after they used guns.

Case No.: 5:18-cv-07446-EJD
ORDER DENYING JAHMARI BUTLER'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)

the jury.  In closing argument, the prosecutor never suggested that Butler's prior robberies showed bad character or a propensity to steal.  Rather, the prosecutor used the statement as evidence of intent.  *See* Dkt. 12-13 at 967–68 ("Ultimately this is not a case about whether this defendant Mr. Butler [is] a good person or a bad person."); *see also id.* at 985–986 ("[Butler's statements] [go] directly to showing that he knew what was going on and he was along for the ride, he was there for the team, and he was there to give strength in numbers to his other friends that night.").  Defense counsel also cautioned the jury that Butler's statement about his prior burglaries could not be used as propensity evidence to convict Butler of carjacking: "In our justice system we don't convict people based on what they have been accused of in the past or what they have done in the past." *Id.* at 1011.  Accordingly, the trial court's failure to give a limiting instruction was harmless.[3]

### C. Cumulative Error

Butler last claims that he suffered prejudice due to the cumulative effect of the asserted errors.  Having determined that Butler's conviction was supported by sufficient evidence and that the failure to give a limiting instruction was harmless, the Court finds Butler's cumulative error claim meritless.

### IV.  CONCLUSION

For the foregoing reasons, Butler's petition for writ of habeas corpus is **DENIED.**

**IT IS SO ORDERED.**

Dated: July 23, 2020

EDWARD J. DAVILA
United States District Judge

---

[3] The trial court refused defense counsel's request to give CALCRIM No. 375, the instruction that limits the jury's use of evidence of uncharged offenses to prove identity, intent, or common plan.  For the reasons discussed, the Court finds that refusal harmless.

Case No.: 5:18-cv-07446-EJD
ORDER DENYING JAHMARI BUTLER'S PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)